# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MUHAMMAD ZUBAIR MUFTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:15-CV-97-TLS |
| | ) | |
| LORETTA LYNCH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On October 29, 2015, the Plaintiff, Muhammad Zubair Mufti, filed a pro se Complaint [ECF No. 1] against the following defendants: U.S. Attorney General Loretta E. Lynch, U.S. Secretary of Homeland Security Jeh Johnson, U.S. Secretary of State John F. Kerry, Director of U.S. Citizenship and Immigration Services Leon Rodriguez, U.S. Ambassador to Pakistan Richard Olson, and Jane & John Doe (U.S. Consulars 1 through 999). The Plaintiff alleges that the Defendants, acting in their official capacities, unreasonably delayed the processing of immigrant visa petitions under Form I-130 (Petition for Alien Relative) and Form I-129F (Petition for Alien Fiancé(e)). Attached to the Plaintiff's Complaint is a 56-page exhibit containing a variety of documents related to the visa petitions at issue.

This matter is now before the Court on a Motion to Dismiss [ECF No. 12] and Memorandum in Support [ECF No. 13], filed by the Defendants on December 31, 2015. The Defendants specifically move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). The Plaintiff filed a Response [ECF No. 20] on April 28, 2016; the Defendants filed a Reply [ECF No. 23] on May 16, 2016; and the Plaintiff filed a Surreply [ECF No. 24] on June 3, 2016  For the reasons set forth below, the Motion to Dismiss [ECF No. 12] is granted.

**BACKGROUND**

A review of the Plaintiff's Complaint and his attached exhibit indicates the following: on January 4, 2008, the Plaintiff, a U.S. citizen, married Sidra Zubair Mufti ("Mrs. Mufti"), a citizen of Pakistan, in Karachi, Pakistan. On February 14, 2008, the Plaintiff filed a Form I-130 with U.S. Citizenship and Immigration Services ("USCIS"), on behalf of Mrs. Mufti. On December 2, 2009, USCIS approved the I-130 petition and the file was sent to the National Visa Center ("NVC"), which then forwarded the file to the U.S. Embassy in Pakistan (UEP) for further processing. On September 3, 2010, Mrs. Mufti was interviewed at UEP in connection with her visa application. The consular officer issued a visa refusal letter pursuant to 8 U.S.C. § 1201(g),[1] requesting that Mrs. Mufti provide two original divorce certificates for the Plaintiff's two previous marriages. On October 22, 2011, Mrs. Mufti received a second visa refusal letter pursuant to 8 U.S.C. §§ 1201(g) and 1182(a)(6)(C)(I),[2] because the consular officer questioned the legitimacy of the divorce certificates submitted in connection with the visa application.

On December 5, 2011, the Plaintiff, based on the advice of counsel, filed a second I-130 petition with USCIS on behalf of Mrs. Mufti. On December 5, 2012, the second I-130 petition

---

[1]Section 1201(g) provides that:

No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

[2]Section 1182(a)(6)(C)(I) bars an alien from receiving a visa or admission into the United States the alien "seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter" through "fraud or willfully misrepresenting a material fact."

was approved. On May 16, 2013, Mrs. Mufti was interviewed at UEP in connection with her second visa application. The consular officer then issued a visa refusal letter pursuant to 8 U.S.C. § 1201(g).

On September 4, 2013, USCIS issued the Plaintiff a Notice of Intent to Revoke (NOIR) the first I-130 petition. The NOIR contained a request for the Plaintiff to address the issues surrounding the legitimacy of the divorce certificates the Plaintiff submitted in connection with his petition. On October 4, 2013, the Plaintiff responded to the NOIR and submitted additional evidence in support of the first I-130 petition. Although no date is provided, the Complaint indicates that a visa was issued to Mrs. Mufti shortly after she was interviewed on October 22, 2014.[3] On January 9, 2015, the Plaintiff traveled to Pakistan to bring his family to the United States.

The Plaintiff generally alleges that the Defendants "failed to process promptly and adjudicate [his] sponsorship visa applications in a timely manner" (Compl. ¶ 54), and through their actions, they have "caused unnecessary and injurious delays to [the] Plaintiff, in violation of his rights," (*id.* at ¶ 56). The Plaintiff is suing the Defendants in their official capacities, and is seeking compensatory damages pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2674 (the Federal Tort Claims Act);[4] injunctive and declaratory relief pursuant to 28 U.S.C. § 1361 (the federal

---

[3]Attached to the Defendants' Memorandum [ECF No. 13] in support of dismissal is a Declaration of Chloe Dybdahl [ECF No. 13-1], an attorney at the United States Department of State, who declares under penalty of perjury that, according to the Consular Consolidated Database, a consular officer issued a visa to Mrs. Mufti on November 18, 2014. Because the issuance of Mrs. Mufti's visa is referenced in the Complaint and is central to the Plaintiff's claim, the Court will consider the Defendants' exhibit [ECF No. 13-1] in conjunction with the pleadings. *See Citadel Grp. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012)

[4]The Plaintiff also seeks punitive damages under 15 U.S.C. § 6604, a statute that limits punitive damages for defendants in relation to a "Y2K" action. This statute is inapplicable here.

mandamus statute), 5 U.S.C. § 701 *et seq.* (the Administrative Procedure Act), and 28 U.S.C. § 2201 (the Declaratory Judgment Act); and costs and attorney's fees pursuant to 28 U.S.C. § 2412 (the Equal Access to Justice Act).

## STANDARD OF REVIEW

Rule 12(b)(1) provides that a party may assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

Similarly, when reviewing a complaint attacked by a Rule 12(b)(6) motion, a court must accept all of the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The complaint need not contain detailed facts, but surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). At the same time, the Court must construe the Plaintiff's pro se submissions in a liberal manner. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that a plaintiff's pro se status means that his

4

submissions should be held "to less stringent standards than formal pleadings drafted by lawyers") (internal quotation marks and citation omitted).

## ANALYSIS

**A.  Compensatory Damages**

As an initial matter, the Plaintiff cannot recover damages under 42 U.S.C. § 1983. To prevail on a § 1983 claim, the Plaintiff must show that he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007); *Edgar v. Inland Steel*, 744 F.2d 1276, 1278 (7th Cir. 1984) ("The [§ 1983] statute, by its express terms, is directed only to state wrongdoing."). Because the Plaintiff's Complaint does not pertain to state actors—only to *federal* actors—§ 1983 relief is unavailable. *See Dist. of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973) (explaining that Section 1983 does not apply to federal actors); *Lewis v. Downey*, 581 F.3d 467, 471 n.3 (7th Cir. 2009) ("A county employee caring for federal prisoners arguably becomes a *federal* actor, rather than the requisite *state* actor, rendering § 1983 inapplicable.").[5]

The Plaintiff also invokes 28 U.S.C. § 2674 (the Federal Torts Claim Act). "Generally, an individual may not sue the United States for tortious conduct committed by the government or its agents." *Williams v. Fleming*, 597 F.3d 820, 822 (7th Cir. 2010) (citing *United States v. Navajo*

---

[5]In certain circumstances, a constitutional claim may be filed against a federal actor via a *Bivens* action. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (authorizing the filing of constitutional tort suits against a federal officer in the same way that 42 U.S.C. § 1983 authorizes such suits against a state officer). However, like a § 1983 claim, a *Bivens* action requires that the relevant official be sued in his or her individual capacity. *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005). Moreover, an official cannot be liable on the basis of respondeat superior or supervisory liability, as "there must be individual participation and involvement by the [federal actor]." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). Here, the Plaintiff has not sued the Defendants in their individual capacities, nor has he asserted that the Defendants personally participated in the alleged wrongdoing.

*Nation*, 556 U.S. 287, 289 (2009) ("The Federal Government cannot be sued without its consent."). However, Congress created an exception through the Federal Tort Claims Act (FTCA), whereby a suit is permitted against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Critically, a plaintiff may not bring an FTCA claim unless he first presented the claim to the appropriate federal agency and the agency denied the claim. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suits in federal court until they have exhausted their administrative remedies."); *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) ("[T]he FTCA bars would-be tort plaintiffs from bringing suit against the government unless the claimant has previously submitted a claim for damages to the offending agency, because Congress wants agencies to have an opportunity to settle disputes before defending against litigation in court.") (citation omitted). The claim must be presented in writing to the appropriate Federal agency within two years after the claim accrues; and the plaintiff must then file suit within six months of the agency's denial of the claim. 28 U.S.C. § 2401(b).[6]

The Plaintiff concedes in his Response that he did not exhaust his administrative remedies by presenting his claim to the appropriate federal agency prior to the filing of this lawsuit. Nevertheless, he seeks permission to comply with (or perhaps, for the Court to waive) the FTCA's exhaustion requirement, noting that he "was very much afraid to follow the FTCA

---

[6]The Court notes that the Seventh Circuit does not treat compliance with the FTCA's exhaustion requirement as a jurisdictional prerequisite; but instead, as a "condition precedent to the plaintiff's ability to prevail." *Smoke Shop*, 761 F.3d at 786–87 (internal quotation marks and citation omitted).

procedure . . . because it could make the Defendants more hostile and the slim chances of his case approval would totally diminish." (Pl.'s Resp. 2.)

The United States Supreme Court has held that because the FTCA represents a waiver of sovereign immunity, its provisions must be strictly construed. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990); *see also Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) ("A plaintiff's failure to exhaust administrative remedies before he brings suit mandates dismissal of the claim.") (citing *McNeil*, 508 U.S. at 113). While an equitable defense to the FTCA's exhaustion requirement may be available in certain circumstances, the Plaintiff has not presented a sufficient equitable defense here. Notably, the Plaintiff waited almost a full year between the issuance of Mrs. Mufti's visa and the filing of this lawsuit.

Notwithstanding, the Plaintiff has not pointed to any relevant state law which imposes a duty of care on a private person under circumstances similar to the government's processing of a visa application. And even assuming that USCIS has a duty to process visa applications in a timely manner, the Plaintiff's allegations offer no basis for the Court to declare that the processing delay was unreasonable. For all of these reasons, the Plaintiff's claims for monetary damages are dismissed.

## B. Injunctive and Declaratory Relief

The Plaintiff also seeks injunctive and declaratory relief pursuant to 28 U.S.C. § 1361 (the federal mandamus statute), 5 U.S.C. § 701 *et seq.* (the Administrative Procedure Act), and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an extraordinary remedy, and will be granted only if the plaintiff demonstrates that three conditions are met: (1) he has a clear right to the relief sought; (2) the defendant has a duty

to perform the act in question; and (3) no other adequate remedy is available. *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002). Likewise, the Administrative Procedure Act (APA) provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," 5 U.S.C. § 702, and

> [t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed.

5 U.S.C. § 706(1); *see also Patel v. Rodriguez*, No. 15–cv–486, 2015 WL 6083199, at *5 (N.D. Ill. Oct. 13, 2015) ("To succeed on a claim for unreasonable delay under the APA or the Mandamus Act, a plaintiff must show (1) that the agency failed to take a clear, nondiscretionary act that it is required to take, (2) that the delay is unreasonable, and (3) that there is no other adequate avenue for relief.") (citations omitted).

After reviewing the Plaintiff's submissions, the Court is uncertain as to what duty the Plaintiff seeks to compel. The record indicates that USCIS adjudicated the Plaintiff's I-130 petition, and that on November 18, 2014, a consular officer issued the Plaintiff's spouse an immigrant visa.[7] Accordingly, the Plaintiff's claims for injunctive relief—if any—appear to have been rendered moot. *See Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (finding that a claim is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party") (internal quotation marks and citation omitted). His claims for injunctive and declaratory

---

[7]In his Response the Plaintiff appears to narrow his requested relief to monetary damages. *See* Pl.'s Resp. 1 ("[T]he original suit was NOT pleaded for gra[n]ting Plaintiff spousal US visa applications. Plaintiff is asking for the monetary remedy due to a very long denial/delay in processing his visa applications.").

relief are dismissed.[8]

### C. Costs and Attorney's Fees

Lastly, the Plaintiff seeks attorney's fees and costs pursuant to 28 U.S.C. § 2412 (the Equal Access to Justice Act). "To be eligible for a fee award under the Equal Access to Justice Act (EAJA), [a plaintiff] must show: (1) that he was a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and (4) that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Krenioch v. United States*, 316 F.3d 684, 687 (7th Cir. 2003) (quoting *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). Aside from the fact that the Plaintiff is a pro se litigant—and is therefore not entitled to EAJA fees, *see id.* at 688—the Plaintiff is not a prevailing a party. Accordingly, his request for EAJA fees is denied.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss [ECF No. 12] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on June 7, 2016.

       s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

---

[8]For the reasons expressed above, the Court declines to entertain the Plaintiff's claim under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 286–88 (1995) (finding that the decision whether to entertain a claim under the Declaratory Judgment Act is committed to the discretion of the district court, even when the suit otherwise satisfies subject matter jurisdictional prerequisites).